UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

MONIKA LUKASIEWICZ-KRUK

                       Plaintiff,

     -against-

GREENPOINT YMCA and YMCA OF
GREATER NEW YORK,

                   Defendants.

-------------------------------------------------------------------x

07-CV-2096 (ARR)(LB)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

ORDER

ROSS, United States District Judge

     Plaintiff, Monica Lukasiewicz-Krul, brought this *pro se* action, alleging age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34, as amended ("ADEA") and gender and national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII"), against her former employer, Greenpoint YMCA and YMCA of Greater New York. Presently before the court is the defendants' motion for summary judgment. For the following reasons, defendants' Fed. R. Civ. P. 56(b) motion for summary judgment is granted.

## BACKGROUND

     Except as indicated, the following facts are either undisputed, or are plaintiff's version of disputed facts.[1]

---

[1] Defendant asserts that "Plaintiff's Statement of Facts – Work and Discrimination History" does not comply with Local Rule 56.1, and that both the "Statement of Facts" and "Plaintiff's Objection to Defendants' Statement of Undisputed Facts" fail to comply with Local Rule 56.1(d) because plaintiff does not provide a citation to evidence

The YMCA of Greater New York is a not-for-profit organization that provides various services to the local community. The Greenpoint YMCA is a local branch of the YMCA of Greater New York located in Brooklyn. (Defs.' Statement of Undisputed Material Facts ¶ 1.) Plaintiff Monika Lukasiewicz-Kruk, a Polish-American woman born January 7, 1965, began as a part-time volunteer at the Greenpoint YMCA beginning in November 1995. (Pl.'s Statement of Facts ¶ 2.) Plaintiff became employed by the facility as a part-time Group Exercise Instructor in January 1996. (Id.) In 1997, plaintiff also became the part-time Front Desk Representative. In September 1997, plaintiff was selected for the full-time Physical Coordinator position. (Pl.'s Statement of Facts ¶ 4.) In April 1998, plaintiff was promoted to the position of Fitness Director, and in February 1999, plaintiff was again promoted, in this instance to the position of Program Director. (Pl.'s Objection to Defs.' Statement of Facts ¶ 6-7.)

In February of 2002, Loretta Trapani joined the Greenpoint YMCA as Executive Director. (Defs.' Statement of Facts ¶ 8.) In March of 2002, plaintiff began taking on responsibilities in the YMCA's membership department, and in April 2002, her title was changed to Senior Program Director in charge of the Membership, Health & Wellness, and Aquatics Departments. (Pl.'s Statement of Facts ¶ 13.) In June of 2002, Ms. Trapani hired Melvin Tse as Senior Program Director for Youth & Family programs. (Pl.'s Statement of Facts ¶ 15.) Mr. Tse's child began attending preschool at the facility for free as per the Greenpoint YMCA's policy for exempt staff. (Pl.'s Statement of Facts ¶ 15.) Plaintiff claims that in 2004, Ms. Trapani changed the Greenpoint YMCA's childcare policy, and introduced fees for exempt

---

that would be admissible following many of her factual assertions, or cites to evidence that was not produced during discovery. (Defs.' Reply Mem. at 3.) As discussed below, *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions. Like a verified complaint, plaintiff's "Statement of Facts" and her "Objection to Defendants' Statement of Facts" are sworn under penalty of perjury. As such, facts asserted in these documents based on personal knowledge will be considered proper for purposes of the summary judgment motion. See e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment.").

staff, following which plaintiff was required to pay. Plaintiff also claims that Mr. Tse's child continued attending for free. (Pl.'s Statement of Facts ¶ 25.)

According to the plaintiff, "on several occasions, [Ms.] Trapani criticized [her] for speaking Polish with [her] subordinates, even though situations required that." (Pl.'s Statement of Facts ¶ 21.) She also states that on three different occasions, Polish-American applicants for new positions, promotions, or volunteer opportunities at the YMCA were not considered by Ms. Trapani or Mr. Tse. (Pl.'s Statement of Facts ¶ 30, 31, 41; Aff. of Beata Kalita; Aff. of Janusz Zastocki.)

In March 2004, the Greenpoint YMCA's Director of Guest Rooms, Paul Cardenas, left his position, and instead of hiring a replacement, Ms. Trapani assigned facility management responsibilities to Mr. Tse. (Pl.'s Statement of Facts ¶ 27; Defs.' Statement of Facts ¶ 13-14.) Ms. Trapani assigned Greg Maziarz, then the Greenpoint YMCA's Business Manager, responsibility for the approximately 100 guest rooms at the Greenpoint facility. (Defs.' Statement of Facts ¶ 14.) In May 2004, plaintiff was invited to serve on a team of consultants to the Chinatown YMCA regarding its opening and operations. (Pl.'s Statement of Facts ¶ 32.)

In June of 2004, plaintiff learned of Ms. Trapani's intention to make Mr. Tse an Associate Executive Director ("AED") at the Greenpoint facility. (Pl.'s Statement of Facts ¶ 33.) Plaintiff states that she sought to speak to Ms. Trapani regarding this change in staffing, and was not afforded an opportunity to do so. (Pl.'s Statement of Facts ¶ 34.) On June 28, 2004, plaintiff sent a letter to Jack Lund, President and CEO of the YMCA of Greater New York stating her concerns regarding facility management and Mr. Tse's qualifications. (Amended Compl. at Attach. 3.) Plaintiff alleges that Ms. Trapani received a copy of the letter, and threatened plaintiff with the loss of her job. (Amended Compl. at 2, Pl.'s Statement of Facts ¶ 34.) Plaintiff

3

also alleges that Ms. Trapani asked plaintiff if she would have applied for the Associate

Executive Director position if it had been posted. Ms. Trapani allegedly stated that she did not

think plaintiff would be interested in such a position "as a mother of a little child." (Amend.

Compl. at 2, Pl.'s Statement of Facts ¶ 39.) Plaintiff also alleges that when she informed Ms.

Trapani that she had been working at the YMCA for eight and a half years, Ms. Trapani stated,

"some people work too long here." (Pl.'s Statement of Facts ¶ 40.) In December 2004, Mr. Tse's

title changed from Senior Program Director to Associate Executive Director. (Pl.'s Statement of

Facts ¶ 46.)[2]

In early 2005, Ms. Trapani left the Greenpoint YMCA for the position of Senior

Executive Director, Staff Development, in the office of the YMCA of Greater New York. (Defs.'

Statement of Undisputed Material Facts ¶ 17.) Plaintiff applied for the Executive Director

position, and four to five months later, plaintiff and Mr. Tse interviewed for the position with the

Association Office. (Amend. Compl. at 2.) Plaintiff states that as the two final candidates, she

and Mr. Tse were to be interviewed by the Greenpoint Board of Managers, but only Mr. Tse was

interviewed. (Amend. Compl. at 2.) In May 2005, Mr. Tse was named Executive Director.

(Defs.' Statement of Facts ¶ 19.)

In June 2005, plaintiff was invited by the Executive Director of the Chinatown YMCA to

apply for a Center Director position. (Pl.'s Statement of Facts ¶ 60.) Plaintiff interviewed for the

position on June 14, 2005, but was removed from the applicant pool prior to a decision being

made, allegedly because of the letter she sent to Mr. Lund on June 28, 2004 regarding her

---

[2] Defendant states that "After Mr. Tse had been successfully managing the Greenpoint facility for several months, Ms. Trapani advocated for a change in title to reflect his added responsibility." (Defs.' Statement of Facts ¶ 16.) Plaintiff admits to the title change, but disputes the remainder of defendants' statement. (Pl.'s Objection to Defs.' Statement of Facts ¶ 6-7.)

concerns about facility management and Mr. Tse's qualifications. This letter, according to plaintiff, led the defendants to assert that she "was not a team player." (Aff. Of Hong Shing Lee.)

In July of 2005, Mr. Maziarz's title became Associate Executive Director of Business Operations for the Greenpoint and Bedford-Stuyvesant YMCAs. (Pl.'s Objection to Defs.' Statement of Facts ¶ 20.)

Defendants assert that in July 2005, Mr. Tse began developing a plan for restructuring the Greenpoint YMCA. This restructuring plan called for an elimination of the Senior Program Director, Membership, Health & Wellness and Aquatics position, and assigned responsibility for Membership, Health & Wellness and Aquatics, as well as guest rooms and the facility to the Associate Executive Director position. (Defs.' Statement of Facts ¶ 24; Tse Dep. at 24; Tse Aff. ¶ 13.) Defendants state that during the last quarter of 2005, Mr. Tse presented the restructuring plan to Rena McGreevy, Senior Vice President of Operations, who approved the elimination of the Senior Program Director position. (Defs.' Statement of Facts ¶ 27, 29; Tse Aff. ¶ 16; McGreevy Aff. ¶ 8.) Plaintiff disputes that a restructuring actually took place.

Plaintiff states that in early February 2006, Mr. Tse asked her to interview a candidate for the Fund Development Director position. When plaintiff asked Mr. Tse about a second candidate, plaintiff states that Mr. Tse said that he would only interview the first one, and that the other was "too old and did not fit YMCA." (Pl.'s Statement of Facts ¶ 66.)

On February 24, 2006, Mr. Tse notified plaintiff that her position had been eliminated, based on a restructuring carried out by the Association Office. (Pl.'s Statement of Facts ¶ 68.) Plaintiff alleges that Mr. Tse told her that she would not get the AED position and that she "should decide if [she] want[ed] to continue working for YMCA," which she answered affirmatively. (Pl.'s Statement of Facts ¶ 68.) Plaintiff states that she did not receive an annual

merit review that year, and on March 1, when she informed Mr. Tse again of her interest in continuing to work for the YMCA, she was told, "there is no job for you at any branch in New York." (Pl.'s Statement of Facts ¶ 70.) Defendants claim that Mr. Tse explained to plaintiff on February 24, 2007 that she was not qualified to fill the AED position. Defendants assert that plaintiff was not qualified to fill the AED position because she lacked prior experience managing guest rooms and demonstrated a lack of judgment and leadership as Senior Program Director. (Defs.' Statement of Facts ¶ 33.) Plaintiff admitted in her deposition that management of guest rooms had never been among her responsibilities, (Pl.'s Dep. at 40-42), but disputes defendants' assertion that she was not qualified, stating that she was familiar with guest room operations first as Front Desk Representative, and later as Senior Program Director in charge of front desk staff and operations. (Pl.'s Objection to Defs.' Statement of Facts ¶ 33.) Plaintiff also disputes defendants claim that she demonstrated a lack of judgment and leadership. (Id.)

Plaintiff's last day of employment was March 10, 2006. Several months later, Mr. Maziarz, then 28 years old, began as the AED of the Greenpoint YMCA. Defendants claim that Mr. Maziarz had experience successfully managing guest rooms at the Greenpoint YMCA for over two years, and had a proven track record of leadership in his role as Associate Executive Director of Business Operations supporting two YMCA branches. (Defs.' Statement of Facts ¶ 36; Tse Dep. at 38-39; Tse Aff. ¶ 17.) Plaintiff acknowledges that Mr. Maziarz had experience managing guest rooms since 2004 (Pl.'s Dep. at 158), but disputes that Mr. Maziarz was qualified to fill the AED position, claiming that he lacked experience with Membership, Aquatics, Health and Wellness. (Pl.'s Objection to Defs.' Statement of Facts ¶ 36.)

On July 24, 2006, plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On May 21, 2007, plaintiff commenced this

6

action by filing her complaint, alleging age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34, as amended ("ADEA") and gender and national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII"). On June 29, 2007, plaintiff filed an Amended Complaint, asserting that defendants discriminated against her on the basis of her age, gender, and national origin in violation of Title VII and the ADEA.

Plaintiff points to the following acts in alleging defendant's unlawful discrimination: (1) failure to consider and promote her to an Associate Executive Director position in 2004; (2) failure to consider and promote her to the Executive Director position in May of 2005; (3) failure to consider her for and removing her from the Chinatown YMCA's candidate pool for Center Director in June of 2005; (4) termination of her employment on March 10, 2006; (5) failure to promote her to an Associate Executive Director position in March of 2006; and (6) barring her from employment.

## DISCUSSION

Defendants have moved for summary judgment, arguing that (1) plaintiff's claims relating to events that took place more than 300 days prior to her filing a complaint with the EEOC are time barred; and (2) even if plaintiff has properly alleged a discrimination claim, plaintiff has not successfully rebutted defendants' non-discriminatory reasons for the challenged adverse employment actions.

### I. __Summary Judgment Standard__

A moving party is entitled to summary judgment if, "upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law." Richardson v.

Selsky, 5 F.3d 616, 621 (2d Cir. 1993); see Fed. R. Civ. P. 56(c). An issue of fact is genuine

when "a reasonable jury could return a verdict for the nonmoving party," and facts are material

to the outcome of the litigation if application of the relevant substantive law requires their

determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party

has the initial burden of "informing the district court of the basis for its motion" and identifying

the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."

Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts

that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250;

Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining

whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all

reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655

(1962)).

 If the moving party meets its burden, the burden then shifts to the non-moving party to

come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ.

Proc. 56(e). "[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is

apparent that no rational finder of fact "could find in favor of the non-moving party because the

evidence to support its case is so slight" should summary judgment be granted. Gallo v.

Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

*Pro se* complaints are to be construed liberally during the summary judgment phase. Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts must read a *pro se* litigant's supporting papers liberally, interpreting them "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996) (internal quotation marks omitted). This does not, however, "relieve [P]laintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). "[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's bald assertion, unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Monterroso v. Sullivan & Cromwell, LLP, 591 F.Supp.2d 567, 577 (S.D.N.Y. 2008) (internal quotations omitted). Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, (1986). A *pro se* plaintiff's path to victory cannot be paved by mere conjecture or speculation. Bickerstaff v. Vassar Coll., 196 F.3d 435, 451-52 (2d Cir. 1999) (stating that conclusory allegations of discrimination unsupported by other affidavits or verifiable particulars are insufficient to defeat summary judgment). A plaintiff must set forth specific facts to defeat summary judgment. Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (holding that where affidavits made "bald assertions and legal conclusions" devoid of specifics, the district court was right to not rely on them).

## II.    Plaintiff's 2004 and 2005 Allegations

### A.  Plaintiff's Title VII and ADEA Claims

Plaintiff first alleges that defendants engaged in discrimination through their (1) failure to consider and promote her to an Associate Executive Director position in 2004; (2) failure to

consider and promote her to the Executive Director position in May of 2005; and (3) failure to consider her for and removing her from the Chinatown YMCA's candidate pool for Center Director in June of 2005. Defendant moves for summary judgment on these claims on the grounds that plaintiff's 2004 and 2005 allegations are time-barred under the applicable statute of limitations.

A plaintiff may not assert Title VII or ADEA claims based on events transpiring more than 300 days prior to the filing of her EEOC charge. See 42 U.S.C. § 2000e-5(e)(1) ("in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... [a] charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful practice occurred"); 29 U.S.C. § 626(d)(2) ("no civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed ... within 300 days after the alleged unlawful practice occurred."); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 108-09 (2002); Fleming v. Verizon New York, Inc., 419 F.Supp. 2d 455, 467 (S.D.N.Y. 2005). Plaintiff filed her EEOC charge on July 24, 2006. (Amend. Compl. at Attach. 2). Thus, plaintiff's Title VII and ADEA claims are time-barred to the extent they rely on factual allegations prior to September 27, 2005, unless such allegations comprise a continuing violation extending beyond that date. Feldman v. Nassau County, 349 F.Supp.2d 528, 536 (E.D.N.Y. 2004), aff'd, 434 F.3d 177 (2d Cir. 2006); Fleming, 419 F.Supp. 2d at 467.

Plaintiff alleges three acts of discrimination on account of her age, gender, and national origin prior to September 27, 2005: (1) defendants' failure to consider and promote her to an Associate Executive Director position in 2004; (2) defendants' failure to consider and promote

her to the Executive Director position in May of 2005; and (3) defendants' failure to consider her for and removing her from the Chinatown YMCA's candidate pool for Center Director in June of 2005. (Amended Compl. at 3-4; Pl.'s Answer to Defs.' Memorandum of Law at 3.) Because none of these alleged acts constitutes a continuing violation extending beyond the 300 day mark, plaintiff's Title VII and ADEA claims are dismissed as time-barred to the extent they rely on events before September 27, 2005.

The continuing violation doctrine has generally been limited to situations where a specific discriminatory policy or mechanism has been alleged. See Bailey v. Colgate-Palmolive Co., 2003 U.S. Dist. LEXIS 8175 at *25 (S.D.N.Y. 2003); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996); see also Crosland v. City of New York, 140 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) (doctrine generally "limited to situations where there are specific policies or mechanisms, such as discriminatory seniority lists or employment tests"). Thus, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998) (internal quotations omitted).

"Discrete acts such a termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Morgan, 536 U.S. at 114. In Morgan, the Supreme Court held that Title VII precludes recovery for discrete acts of discrimination that occur outside the statutory time period, *even if* the acts are related to acts alleged in timely filed charges. Id. at 113 (emphasis added); Bailey, 2003 U.S. Dist. LEXIS, at *22. Due to the limitations placed on the continuing violation doctrine by the Court in Morgan, plaintiff can only file a charge based on discrete acts that "occurred" within the appropriate time

period. Morgan, 536 U.S. at 114-15 (noting that other Title VII claims, such as hostile work environment claims, are different in kind from discrete acts). As noted above, plaintiff filed her EEOC Charge on July 24, 2006. (Amend. Compl. at Attach. 2.) Thus, to the extent plaintiff's first three claims under Title VII and the ADEA concern acts occuring prior to September 27, 2005, they are time-barred.[3]

Accordingly, defendants are entitled to summary judgment on plaintiffs first three claims.


### III.    Plaintiff's 2006 Allegations

Plaintiff further claims that defendants engaged in age, gender, and national origin discrimination in violation of Title VII and the ADEA based on her March 10, 2006 termination, the failure of defendants to promote her to an Associate Executive Director position in March of 2006, and defendants' "barring" plaintiff from subsequent employment at the YMCA. Defendants do not contest that plaintiff timely filed an action with the EEOC following these events, but move for summary judgment with respect to plaintiff's termination and the failure to promote her to the AED position on the basis that defendants have articulated a legitimate, non-discriminatory reason for plaintiff's termination, which plaintiff has not rebutted. Defendants also move for summary judgment with respect to plaintiff's claim that she was "barred" from employment on the ground that plaintiff has not established a prima facie case of discrimination. For the reasons set forth below, defendants' motion for summary judgment with respect to plaintiff's 2006 claims is also granted.

---

[3] In her response to defendants' motion for summary judgment, plaintiff argues that her discrimination claims based on events prior to September 27, 2005 are not time-barred under New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290, *et. seq.*, which is governed by a three-year statute of limitations. N.Y. C.P.L.R. § 214(2). These claims are addressed in Part IV below.

## A. McDonnell Douglas Framework

Under the three-part burden shifting tests articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff must first establish a *prima facie* case that she suffered from a discriminatory employment action on the basis of being a member of a protected class "by either direct, statistical or circumstantial evidence." Bickerstaff, 196 F.3d at 445; McDonnell Douglas, 411 U.S. at 802. The burden then shifts to the defendants to provide a legitimate, nondiscriminatory reason for its actions. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); McDonnell Douglas, 411 U.S. at 802. If the defendants articulate a nondiscriminatory reason for their conduct, the inference of discrimination raised by plaintiff's prima facie case "drops out of the picture" and the burden shifts back to plaintiff to prove that defendants' nondiscriminatory reason is pretextual. St. Mary's Honor Ctr., 509 U.S. at 507-08.[4]

Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); Adams v. Canon USA, Inc., 2009 WL 3064856 at *12 (E.D.N.Y. 2009). Although courts generally begin their analysis of a discrimination claim with an inquiry into whether a plaintiff has shown a prima facie case, "the issues surrounding the prima facie inquiry and those surrounding the pretext inquiry are not easily distinguishable, despite the apparent rigidity of the burden-shifting formula. Instead, the bottom line in a Title VII summary judgment motion is, simply, whether plaintiff has presented sufficient evidence from which a reasonable trier of fact could determine

---

[4] The burden-shifting framework for a Title VII direct discrimination claim applies to claims under the ADEA. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985)); Wellesley v. Debevoise & Plimpton LLP, 2009 WL 3004102, at *1 (2d Cir. Sept. 21, 2009) (applying framework to an ADEA claim).

that defendants discriminated against [her.]" <u>Goldman v. Admin. for Children's Servs.</u>, 2007 WL 1552397, at *5 (S.D.N.Y. 2007); <u>Adams</u>, 2009 WL 3064856 at *13. Assuming that the first two steps of the <u>McDonnell Douglas</u> framework have been satisfied, "the question in adjudicating the defendant[s'] motion of summary judgment becomes simply whether the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that her dismissal was motivated at least in part by" discrimination. <u>Tomassi v. Insignia Financial Group, Inc.</u>, 478 F.3d 111 (2d Cir. 2007).

### B. Plaintiff's Termination

With regard to plaintiff's termination, defendants do not concede that plaintiff has established a *prima facie* case that she was terminated on the basis of her age, gender, or national origin, but argue that even if plaintiff had established such a case, she has failed to rebut their legitimate, non-discriminatory rationale for her termination. Defendants' state that plaintiff's job was eliminated because of a restructuring at the Greenpoint YMCA, whereby plaintiff's position, the Senior Program Director, Membership, Health & Wellness and Aquatics, was eliminated, and where an Associate Executive Director position was created that incorporated plaintiff's duties. (Defs.' Statement of Facts ¶ 24; Tse Dep. at 24; Tse Aff. ¶ 13.)

When viewed as a whole and in the light most favorable to the plaintiff, the record does not support a finding that plaintiff's termination was motivated at least in part by gender or national origin discrimination in violation of Title VII, or age discrimination in violation of the ADEA.

*i.* *Plaintiff's Allegations of Discrimination*

Plaintiff has alleged statements or policies during Ms. Trapani's time as Executive Director that implicate gender, national origin, and age discrimination. She alleges being criticized for speaking Polish on several occasions, that Ms. Trapani told her that she didn't think plaintiff was interested in a position "as the mother of a little child," that Ms. Trapani had different policies for male and female employees regarding child care, that Ms. Trapani told her that "some people work too long here," and that certain candidates were "stale" after ten years of work at the YMCA.[5] However, even if these statements or policies do establish an inference of discrimination, plaintiff has not alleged that Ms. Trapani was in any way involved in the March 2006 termination decision, nor does anything in the record suggest her involvement with that determination. See, e.g., Anderson v. Hertz Corp., 507 F.Supp.2d 320 (S.D.N.Y. 2007) (granting summary judgment where plaintiff offered no evidence of racial remarks by the two managers most directly involved in the hiring and firing of the plaintiff).

Plaintiff does allege that Mr. Tse, who was directly involved in her termination, did on two occasions fail to consider Polish-American applicants for available positions at the Greenpoint YMCA: once in 2004 when hiring an Assistant Building Superintendant, and in 2005, when plaintiff asked him to rehire the former Health and Wellness Director. (Pl.'s Statement of Facts ¶¶ 30, 61; Aff. of Janusz Zastocki; Aff. of Beata Kalita.) However, plaintiff does not provide any evidence that Mr. Tse failed to consider them on account of their national origin, any evidence regarding the qualifications of these individuals, or whether non-Polish-American individuals eventually received the jobs. She simply asserts that "Mr. Tse's decision was discriminatory" and that "[i]t showed his bias against Poles." Such bald assertions are not

---

[5] Plaintiff further alleges that Ms. Trapani failed to consider a Polish candidate for a promotion to Front Desk Director in May 2004. (Pl.'s Statement of Facts ¶ 31.)

sufficient to defeat a motion for summary judgment. See Bickerstaff, 196 F.3d at 451-52 (stating that conclusory allegations of discrimination unsupported by other affidavits or verifiable particulars are insufficient to defeat summary judgment).

With respect to her age discrimination claims under the ADEA, plaintiff alleges that Mr. Tse asked her to interview a candidate for the Fund Development Director position in February of 2006. When plaintiff asked Mr. Tse about a second candidate, plaintiff alleges that Mr. Tse said that he would only interview the first candidate, and that the other was "too old and did not fit YMCA." (Pl.'s Statement of Facts ¶ 66.) While deplorable, this alleged comment, by itself, is insufficient to create an inference of age discrimination under the ADEA. Courts have held that "stray workplace remarks that have no demonstrated nexus to the personnel action complained of are insufficient to defeat a motion for summary judgment." See Ranieri v. Highland Falls-Fort Montgomery Sch. Dist., 198 F.Supp.2d 542, 545 (S.D.N.Y. April 18, 2002) (citing Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir.1998)). Plaintiff offers no evidence as to the age of the second candidate for the Fund Development Director position, or any evidence as to the age of the individual who eventually received the position, and has thus failed to demonstrate a nexus to her termination.

ii.     *Defendants' Restructuring Rationale*

When plaintiff was notified of her termination by Mr. Tse on February 24, 2006, she was told her position was being eliminated due to a restructuring carried out by the Association Office. (Pl.'s Statement of Facts ¶ 68.) Plaintiff claims that the restructuring rationale is pretextual, alleging that (1) defendants were not consistent in their terminology with respect to the restructuring, (2) there was, in fact, no restructuring, "at least for the first four months" after

16

her dismissal; and (3) plaintiff, other staff members, and members of the Greenpoint YMCA Board of Managers were not informed about the restructuring. (Pl.'s Mem. of Law at 5; Aff. Of John Tapper ¶ 3.) Plaintiff further alleges that the facts as a whole demonstrate that her termination was motivated by age, gender, and national origin discrimination.

Plaintiff alleges that defendants at various times referred to the restructuring as a "reorganization," "staff restructure," and "job elimination," and that such inconsistencies show that the defendants' rationale is pretextual. (Pl.'s Mem. of Law at 6). Such inconsistencies in terminology, however, do not raise a triable issue of fact. See, Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir 1988) (finding that, to defeat a motion for summary judgment, inconsistencies as to the employer's reason must be "material," not "minor"). All terms used by defendants when describing plaintiff's termination connote a change in staff positions and responsibilities at the Greenpoint YMCA, which defendants offer as the legitimate, non-discriminatory rationale for termination. (Defs.' Statement of Facts ¶ 24-26.)

Plaintiff also points out that no restructuring or staff changes took place for at least four months following her dismissal. Defendants do not dispute that it was several months after plaintiff's termination that Mr. Maziarz moved into the role of AED at the Greenpoint YMCA, and assert that the YMCA was required to determine how to fill Mr. Maziarz's then current role as AED of Business Operations at the Bedford YMCA facility. (Dep. of Melvin Tse at 38.) This delay, even when viewed in a light most favorable to the plaintiff, does not rise to the level of a "material" inconsistency, and thus does not raise a triable issue of fact. See, Dister, 859 F.2d at 1116.

Finally, plaintiff asserts that if the restructuring were legitimate, she herself, other staff, and members of the Board of Managers would have been informed of the plan. Plaintiff

17

provides an affidavit from a member of the Board of Managers at the time of her termination, who states that he was never informed of any restructuring plans in 2005. (Aff. Of John Tapper ¶ 3.) However, plaintiff does not allege that the directors, staff, and the Board of Managers were regularly notified of day to day business decisions such as staff restructuring, or that approval from the Senior Vice President of Operations for the YMCA of Greater New York was insufficient for implementing a restructuring, (Defs.' Statement of Facts ¶ 29; Aff. Of Rena McGreevy ¶ 8). Plaintiff admits that the Board of Managers is a voluntary group of community representatives who do not have final approval with respect to hiring. (Aff. of Pl. at 125).[6]

In Montana v. First Federal Savings and Loan Association of Rochester, 869 F.2d 100 (2d Cir. 1989), the plaintiff's position was eliminated following the defendant's restructuring. The plaintiff brought suit under the ADEA, and the Second Circuit found that the plaintiff's evidence was sufficient to show that the discharge occurred in circumstances giving rise to an inference of age discrimination. The Court found that the plaintiff had provided evidence to defeat summary judgment where: (1) the plaintiff was the oldest and highest paid employee in her department (2) she was the only department head whose position was consolidated into corporate headquarters; (3) she was not offered the opportunity to transfer to corporate headquarters, where her responsibilities were "sent"; (4) after her termination, her duties were not eliminated, but were reassigned to a younger employee who was already overworked, and then subsequently to another employee; (5) defendant created a position comparable to plaintiff's but did not consider her for it although she was qualified, and (6) after plaintiff's discharge,

---

[6] During the deposition of Mr. Tse, plaintiff inquired why Mr. Tse did not consult the Board of Managers regarding her dismissal, to which Mr. Tse responded, "because that's not the []responsibility [of the] board of managers." (Dep. of Melvin Tse at 52.) The plaintiff then pointed to the YMCA of Greater New York Bylaws, which state that "[Branch Executive Directors] shall also keep their respective Branch Board of Managers informed on all matters pertaining to Branch administration and operations." (Pl.'s Reply Mem. at Ex. B.) Mr. Tse responded that the Board "has no say in day-to-day operations." (Dep. of Melvin Tse at 53.)

purportedly as part of a staff reduction, the defendant increased the number of employees in plaintiff's department, and failed to consider the plaintiff for any of these positions. Montana, 869 F.2d at 105.

With respect to her ADEA claim, Ms. Lukasiewicz-Krul states that she was the oldest director at the Greenpoint YMCA, (Pl.'s Dep. at 161), that she was the only person whose position was eliminated by the restructuring,(Aff. of Melvin Tse ¶ 13; Aff. of Rena McGreevy ¶ 4), that she was not provided an opportunity to transfer to another YMCA branch, and that her responsibilities were not eliminated, but were merged with others to create the AED position which eventually was given to a younger Mr. Maziarz.

Unlike the plaintiff in Montana, however, Ms. Lukasiewicz-Krul has not provided sufficient evidence to raise a genuine issue of fact with respect to her qualifications for the AED position. Defendants assert that because of the restructuring at the Greenpoint YMCA, plaintiff's position was eliminated, and the Associate Executive Director position was created, which would serve as a "second in command" and have responsibility for full operations of the Greenpoint YMCA, including the Membership, Health & Wellness and Aquatics divisions, and management of the guest rooms at the facility. (Aff. of Melvin Tse ¶ 13-14.) Thus, this is not simply a case where one position was eliminated and the responsibilities were distributed to other existing positions, but one where responsibilities were consolidated with wholly different responsibilities for the creation of a new position where specific qualifications were necessary. Defendants claim that plaintiff lacked experience managing guest rooms, and was thus unqualified for this aspect of the AED position. (Aff. of Melvin Tse ¶ 18-19). While Plaintiff has shown that she had experience at the Front Desk and familiarity with the building and guest room layout, she admits that she was never responsible for the management of guest rooms, but

19

that Mr. Maziarz did, as he took over guest room responsibilities upon Mr. Cardenas' departure in 2004. (Pl.'s Dep. at 44-45; 94.)

While the Montana Court did not specify that all six elements must be met, the examination of the totality of the circumstances led the Court to find the existence of a genuine issue of material fact, notably, that after a purported staff reduction, additional positions were created for which the plaintiff was qualified. See, e.g., Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 509 (2d Cir. 1994) (finding one of the elements and noting that "in Montana, this court considered such a failure together with five other factors before concluding that there existed a genuine issue of material fact as to whether the employer's asserted justification was pretext). In this case, plaintiff's assertions alleging that defendants' justification was pretextual do not raise a triable issue of fact, as she has not provided sufficient evidence to rebut defendants assertion that she was not qualified for the post-restructuring AED position, a position that incorporated both her responsibilities as well as responsibility for guest room management. Plaintiff has therefore failed to show the existence a genuine factual issue as to whether defendants' stated reason for termination was pretextual, and thus, as to whether age, national origin, or gender were factors in defendants' decision to terminate her.

Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claim regarding her termination.


C.  Defendants' Failure to Promote Plaintiff

Plaintiff further alleges that defendants' failure to promote her to the AED position in 2006 was due to age, gender, and national origin discrimination. As with plaintiff's termination claim, defendants do not concede that plaintiff has established a *prima facie* case that she was

20

not promoted on the basis of her age, gender, or national origin, but argue that even if plaintiff had established such a case, she has failed to rebut their legitimate, non-discriminatory rationale for their decision not to promote her:  that she was unqualified based on her lack of experience managing guest rooms and her demonstrated lack of judgment and leadership. (Aff. of Melivn Tse ¶ 18-19; Defs.' Reply Mem. at 19.)

Plaintiff's evidence with respect to discrimination includes: (1) Mr. Maziarz's age (he was twenty-eight at the time he was made AED at the Greenpoint YMCA); (2) Mr. Maziarz's gender; and (3) the fact that Mr. Maziarz had no experience with the Membership, Health & Wellness and Aquatics divisions, which the AED position was responsible for.  Plaintiff concedes that Mr. Maziarz is of Polish origin, but alleges that he was not as engaged in the community, and that he was only hired following a letter plaintiff wrote to the YMCA central office in Chicago alleging discrimination against her. (Pl.'s Dep. at 154.)

"To rebut a non-discriminatory justification for an alleged failure to promote, a plaintiff must show not only that she was minimally qualified for a position, but also that she was the best qualified for that position using the employer's stated hiring criteria." Ellenbogen v. Projection Video Services, Inc., 2001 WL 736774 at *7 (S.D.N.Y. 2001) (internal citations omitted).  As the Second Circuit has noted, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff...." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir.2001) (internal citation omitted).

As discussed above, defendants assert that because of the restructuring, plaintiff's position was eliminated, and the Associate Executive Director position was created.  The AED would serve as a "second in command" and have responsibility for full operations of the

21

Greenpoint YMCA, including the Membership, Health & Wellness and Aquatics divisions, and management of the guest rooms at the facility. (Aff. of Melvin Tse ¶ 13-14.) Defendants further claim that plaintiff lacked experience managing guest rooms, and that she demonstrated a lack of judgment and leadership, and was thus unqualified for the AED position.[7] (Aff. of Melvin Tse ¶ 18-19). Plaintiff admits that she was never responsible for the management of guest rooms, and that Mr. Maziarz took over guest room responsibilities upon Mr. Cardenas' departure in 2004, and thus had experience with guest room management. (Pl.'s Dep. at 44-45; 94.) While plaintiff has shown herself to be qualified through her experiences in the Membership, Health & Wellness and Aquatics divisions, and while she had familiarity with the facility's guest rooms, she has not shown that she was "so superior" such that no reasonable person could have selected Mr. Maziarz for the AED position over her. See Brown v. Society for Seaman's Children, 194 F.Supp.2d 182, 191 (E.D.N.Y. 2002) ("Title VII may not be used as a vehicle for second-guessing an employer's business judgment.") (citing Davidson v. Time, Inc., 972 F.Supp. 148, 153 (E.D.N.Y. 1997)).

Accordingly, defendants are entitled to summary judgment on the claim regarding defendants' failure to promote plaintiff.

D. Defendants' "Barring" of Plaintiff's Future Employment

Finally, plaintiff alleges that defendants barred her from future employment at the YMCA. Plaintiff alleges that defendants failed to consider her for other positions upon her

---

[7] Defendants allege that that plaintiff failed to timely report an incident involving an allegation of child abuse at the Greenpoint YMCA while she was Senior Program Manager. (Pl.'s Dep. at 245.) Plaintiff does not deny that she should have reported the incident sooner to Ms. Trapani or to Human Resource, (Pl.'s Dep. at 244), but states that her record of employment otherwise demonstrates sound judgment and leadership. Defendants also allege that plaintiff had struggled with communicating with parents regarding the Aquatics program (Dep. of Melvin Tse at 16, 63-64.)

termination, and subsequently failed to hire her for additional available positions. Plaintiff alleges that Mr. Tse informed her at the time of her termination that "there is no job for you at any branch in New York." (Pl.'s Statement of Facts ¶ 2.)

Even if defendants refused to relocate or rehire plaintiff for available positions, plaintiff has not raised a genuine factual issue, nor does the record support a finding of one, as to the claim that defendants have barred her from subsequent employment *on account of* her age, gender or national origin. Howley, 217 F.3d at 150 (stating that the employee is not entitled to judgment unless he or she shows that the challenged employment decision was more likely than not motivated, in whole or in part, by unlawful discrimination); Bickerstaff, 196 F.3d at 451-52 (stating that conclusory allegations of discrimination unsupported by other affidavits or verifiable particulars are insufficient to defeat summary judgment).

Accordingly, defendants are entitled to summary judgment on plaintiff's claims regarding her being "barred" from employment.


## IV.     New York State Human Rights Law ("NYSHRL") Claims

In her response to defendants' motion for summary judgment, plaintiff argues that her discrimination claims based on events prior to September 27, 2005 are not time-barred under New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290, *et. seq.*, which is governed by a three-year statute of limitations. N.Y. C.P.L.R. § 214(2). Defendants argue that plaintiff did not allege a claim under NYSHRL in her complaint or amended complaint, and is thus prevented from asserting such claims at the summary judgment phase.

Plaintiff's complaint and amended complaint are a standardized form provided to *pro se* litigants to bring an action for employment discrimination. The first page of the form directs the

plaintiff to check the box or boxes that apply to her case, the only three choices being: (1) Title VII of the Civil Rights Act of 1964; (2) Age Discrimination in Employment Act of 1967; and (3) Americans with Disabilities Act of 1990. The form neither asks nor provides a space for the plaintiff to state supplemental claims, but does inquire whether the plaintiff has filed a charge with the New York State Division of Human Rights regarding the defendants' alleged discriminatory conduct. (Amend. Compl. ¶ 9.) Plaintiff did not indicate that she had filed a charge with the New York State Division of Human Rights, nor did she mention New York State law in her charge.

When a plaintiff proceeds *pro se*, "a court is obligated to construe [her] pleadings liberally, particularly when they allege civil rights violations." Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004). Additionally, the submissions of a *pro se* litigant "must be interpreted to raise the strongest arguments that they suggest." Applying this standard, courts have found plaintiffs to raise state law claims in *pro se* form employment discrimination complaints where the individual indicated that he filed a charge with the New York State Division of Human Rights, and where he cites New York State Human Rights Law in his written charge, Batac v. Pavarini Construction Co., Inc., 216 Fed. Appx. 58, 61, or where the plaintiff appended her EEOC charge asserting claims under "state and local statutes." Fleming v. Verizon New York, Inc., 419 F.Supp.2d 455, 468. Some courts, following Batac, have found the jurisdictional statement of the *pro se* form complaint, which asserts jurisdiction under "any related claims under New York law," (Amend. Compl. at 2), to be sufficient to state a claim under New York Human Rights Law. Watson v. Arts & Entm't Television Network, 2008 WL 793596 at *6-7, n.1 (S.D.N.Y. Mar. 26, 2008); Grant v. Pathmark Stores, Inc., 2009 WL 2263795 at *1 n.1

24

(S.D.N.Y. Jul. 26, 2009).[8] Other courts have declined to find that a plaintiff alleged New York State claims where no statements exist in the pleadings that can plausibly be read to invoke state law as a basis for a claim, and where plaintiff was given leave to make a motion to amend after being informed of the deficiency. Elmenayer v. ABF Freight Systems, 2001 U.S. Dist. LEXIS 15357 at *26 (E.D.N.Y. 2001).

In this case, plaintiff's *pro se* form complaint included the jurisdictional language "any related claims under New York law." (Amend. Compl. at 2.) Because "a court is obligated to construe [plaintiff's] pleadings liberally," I will consider the plaintiff's complaint to have stated a claim under the NYSHRL. Hemphill, 380 F.3d at 687. However, having dismissed all claims over which this court has original jurisdiction, I decline to exercise supplemental jurisdiction over plaintiff's NYSHRL claims. 28 U.S.C. § 1367(c)(3); see also Valencia ex rel. Franco v. Lee, 316 F.3d 299, 304-06 (2d Cir. 2003). The NYSHRL claims are therefore dismissed without prejudice.

## CONCLUSION

While the record may demonstrate that defendants failed to treat plaintiff with respect or value her contributions to the Greenpoint YMCA throughout her many years of employment, plaintiff has failed to show that a genuine issue of material fact exists with respect to her discrimination claims under Title VII and the ADEA.

For the foregoing reasons, the defendants' motion for summary judgment is granted. The court declines to exercise jurisdiction over any NYSHRL claims and those claims are dismissed without prejudice. The Clerk of the Court is directed to enter judgment accordingly.

---

[8] It should be noted that the current *pro se* form complaint provided by the Southern District of New York *Pro Se* Office does provide specific options for alleging claims under the NYSHRL and the NYCHRL. The form currently used by this District does not.

SO ORDERED.

/S/

_____
Allyne R. Ross
United States District Judge

Dated:        October 29, 2009
              Brooklyn, New York

Service List:

**Plaintiff:**
Monika Lukasiewicz-Kruk
62-31 81 Street
Middle Village, NY 11379
(718) 898-2056
PRO SE


**Defendants:**
Jennifer Beth Courtian
Jackson Lewis, LLP
59 Maiden Lane
New York, NY 10038-4502
212-545-4022